IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                    )
                                          )
SHANTE LaSHELL RIDING,                    )    Case No. 07-42368
                                          )
        Debtor.                           )

ORDER GRANTING TRUSTEE'S MOTION TO DENY CONFIRMATION

The Chapter 13 Trustee requests that I deny confirmation of the Debtor's proposed Chapter 13 Plan because the amount she proposes to pay to unsecured creditors is less than the amount her Form 22C shows she should pay. The Debtor responds that the Form 22C does not accurately reflect her situation because her income during the six months before filing her petition was unusually high, and she will not earn that much in the foreseeable future. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Trustee's Motion to Deny Confirmation will be GRANTED.

The Debtor filed her Chapter 13 case on July 13, 2007. She works on the assembly line at the General Motors plant. Her Plan proposes to pay $736 per month, for fifty-five months, to the Trustee. From that amount, the Plan proposes to pay $1,700 to the Debtor's attorney, at the rate of $250 per month. It also proposes to pay her automobile lender through the Plan, in an equal monthly amount of $400. The Plan further provides that, after the allowed secured, priority, and administrative expenses are satisfied, the balance of payments will be disbursed to general unsecured creditors. According to the parties, the Debtor's Plan will result in the unsecured creditors receiving approximately $18,900.

The Trustee objects to the Plan because, according to the Form 22C, the Debtor has $659.19 in monthly disposable income which, over the applicable commitment period of sixty months,[1] results in disposable income available to unsecured creditors totaling $39,551.40.  Since the Plan proposes to pay a lesser amount to unsecured creditors, the Trustee contends that it violates § 1325(b).  In order to make $659.19 available to unsecured creditors, the Debtor would be required to propose an initial monthly payment of at least $1,309.19 to account for the amounts to be paid to the automobile lender and her attorney.  As noted, her Plan instead proposes a $736 payment.

The difference between the parties' calculations is on the income side of the ledger.  The Trustee relies solely on the Form 22C to determine the Debtor's disposable income.  That form shows that, during the six months prior to the date the case was filed, her gross income averaged $6,244 per month.  At the hearing, the Debtor asked for the opportunity to offer evidence to show that her "current monthly income," which is defined as the average income in the six months prior to the filing of the case,[2] was high due to her having been offered an unusual amount of overtime during that period.  Had she been allowed to do so, she argued, she would have offered pay stubs and tax returns to demonstrate what her actual income is now, and what it is projected to be during the course of her Chapter 13 plan.  According to her counsel, she would have been able to demonstrate that her "projected

---

[1] Since the Debtor's income is above-median, the applicable commitment period is sixty months.  11 U.S.C. § 1325(b)(4).

[2] 11 U.S.C. § 101(10A).

2

disposable income" is lower than the Form 22C calculation, and that she is not capable of making the monthly payment dictated by that calculation.[3]

I granted the Trustee's Motion to Deny Confirmation, however, without giving the Debtor the opportunity to show that the Form 22C does not accurately reflect her projected disposable income. I did so based on the Eighth Circuit Bankruptcy Appellate Panel's recent decision in *In re Frederickson*.[4] Because this ruling deviated from my prior stance on the interpretation of "projected disposable income" and "applicable commitment period" in § 1325(b), the Trustee requested that I issue a written opinion in this case to clarify the status of the law in this District.

As the BAP said in *Frederickson*, the framework for determining whether a plan may be confirmed is set out in § 1325 of the Bankruptcy Code.[5] If an objection to confirmation is filed, the bankruptcy court must determine that the elements of § 1325(b)(1) are met.[6] That section provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of

---

[3] I note that the Debtor claims that her change in income constitutes a "special circumstance" as that term is used in § 707(b)(2)(B). Under that section, a Chapter 7 debtor may rebut a presumption of abuse by demonstrating that certain special circumstances justify additional expenses or adjustments of current monthly income. However, this is a Chapter 13 case. Section 1325(b)(3) provides that expenses (but not income) shall be determined in accordance with § 707(b)(2). Hence, the Court must reject the Debtor's argument that special circumstances may be considered in the context of confirmation of her plan.

[4] ___ B.R. ___, 2007 WL 2752769 (B.A.P. 8th Cir. Sept. 24, 2007).

[5] *Id*. at *3.

[6] *Id*.

3

the effective date of the plan –

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[7]

As noted above, the Debtor's Plan in this case implicates the interpretation of both "projected disposable income" and "applicable commitment period."

The interpretation of these phrases in § 1325(b) is a difficult one, and the courts are certainly divided on the issue.[8] In previous decisions, I agreed with those courts which have

---

[7] 11 U.S.C. § 1325(a)(1).

[8] *Cf., e.g., In re Kibbe*, 361 B.R. 302, 312 (B.A.P. 1st Cir. 2007) ("'projected disposable income' as set forth in § 1325(b)(1)(B) must be grounded in the Debtor's anticipated income . . . during the term of the plan"; "Form B22C must at least be the starting point for any determination of 'projected disposable income'"); *In re Pak*, 357 B.R. 549, 552-53 (Bankr. N.D. Cal. 2006) ("[i]n determining whether a plan provides all of the debtor's 'projected monthly income,' a court should attempt to predict what the debtor's disposable income during the term of the plan will be, using the definition of 'current monthly income' set forth in 11 U.S.C. § 101(10A)"); *In re Casey*, 356 B.R. 519, 522-23 (Bankr. E.D. Wash. 2006) ("the word 'projected' . . . requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income"); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) (in order to give meaning to the word "projected," the language of § 1325(b)(1)(B) means that "the number resulting from Form B22C is a starting point for the Court's inquiry only . . . The significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)"); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), *with, e.g., In re Tranmer*, 355 B.R. 234, 245-46 (Bankr. D. Mont. 2006) (court holds it will apply a mechanical test); *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) ("in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) [using Form B22C] and does the math"); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006) ("[c]alculating 'disposable income' for above-median-income debtors under the new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support").

held that, in interpreting the phrase "projected disposable income," the number representing monthly disposable income on the Form 22C, which calculates income based on historical data and calculates expenses based in part on IRS and other standards, is a starting point for determining "projected disposable income," but that a debtor's actual plan payments should be based on real numbers, subject to change as the debtor's situation changes.[9] I also held that the "applicable commitment period" was a durational requirement, rather than a multiplier in the calculation of the ultimate amount required to be paid in.[10]

In *In re Frederickson*, however, the BAP held that "projected disposable income" is "the disposable income calculated on Form 22C extrapolated over the applicable commitment period."[11] This is so regardless of whether the debtor would appear to be capable of paying more, as in *Frederickson,* or alleges she is incapable of paying such amount, as here.

The result here is that the Debtor is in the difficult position of having to propose a plan that will, most likely, not be confirmed because it is not feasible,[12] since it appears she will

---

[9] *See In re Ward*, 359 B.R. 741 (Bankr. W.D. Mo. 2007); *In re Gress*, 344 B.R. 919 (Bankr. W.D. Mo. 2006); and *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006).

[10] *In re McGuire*, 342 B.R. at 615 (agreeing with *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006)).

[11] 2007 WL 2752769 at *6 (relying on *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006), *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007), *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. Aug. 7, 2007), *In re Puetz*, 370 B.R. 386 (Bankr. D. Kan. 2007), and *In re Berger*, 2007 WL 1704403 (Bankr. M.D. Ga. June 11, 2007)).

[12] 11 U.S.C. § 1325(a)(6).

be unable to make the payments she is required to make under § 1325(b). On the other hand, if she converts her case to Chapter 7 due to her apparent inability to propose a workable plan that complies with § 1325(b), she will then be subject to the United States Trustee's scrutiny under § 707(b)'s presumption of abuse because the forms show she can make payments to her unsecured creditors. In fact, it appears that the Debtor is, in reality, able to make approximately $18,000 in payments to her unsecured creditors, as evidenced by the Plan she has proposed.[13] Consequently, the possibility exists that the Debtor could be in a position where she is not eligible for Chapter 7 because she can pay something to her unsecured creditors, but she cannot possibly propose a confirmable plan that both meets the *Frederickson* interpretation of § 1325(b) and is feasible. For the reasons stated in my dissent in *Frederickson*, this result should not be mandated by the language of § 1325(b). That is because the statute requires a debtor to pay all "projected disposable income" to unsecured creditors, and it is my view, and many courts have held,[14] that that is a term which is capable of being determined based on the debtor's actual income. Where the "current monthly income" for purposes of Form 22C "is not true to the debtor's *actual* current income, courts

---

[13] Ironically, if the Debtor is able to overcome the presumption of abuse, and she is permitted to convert to Chapter 7, her unsecured creditors will likely receive nothing in the liquidation because it appears that the Debtor has no non-exempt equity in any assets. Hence, unsecured creditors will lose out on the over $18,000 that the Debtor currently proposes to pay them.

[14] *See, e.g., In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2006); *In re Mullen*, 369 B.R. 25 (Bankr. D. Or. 2007); *In re Beckerle*, 367 B.R. 718 (Bankr. D. Kan. 2007); *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007); *In re Gordon*, 360 B.R. 679 (Bankr. S.D. Cal. 2007); *In re Riggs*, 359 B.R. 649 (Bankr. E.D. Ky. 2007); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006).

should assume that Congress intended that they rely on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure."[15]  However, since *Frederickson* instead requires us to rely solely on the artificial measure contained in the Form 22C, the Debtor's Plan is not confirmable.

ACCORDINGLY, the Trustee's Motion to Deny Confirmation is GRANTED.  Unless the Debtor either files an amended plan, or a motion to convert, within 20 days, the case will be dismissed.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 10/30/07

---

[15] *In re Kibbe*, 361 B.R. at 312 (emphasis in original).